**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eirena Llewellyn Crow,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-21-08267-PCT-DLR<br><br>**ORDER** |

On March 11, 2019, Claimant Eirena Llewellyn Crow filed an application for Supplemental Social Security Income alleging disability beginning on October 31, 2015. (AR. 73.) Later, she amended her alleged disability onset date to the application date, March 11, 2019. (AR. 15.) The Acting Commissioner of Social Security denied Crow's application initially and again on reconsideration. (AR. 75–101.) After an administrative hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on May 5, 2021, finding Crow not disabled within the meaning of the Social Security Act ("SSA"). (AR. 15–30.) The Appeals Council denied review of that decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (AR. 1–3.) Crow seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g).

**I.      The Five-Step Sequential Evaluation**

To determine whether a claimant is disabled for the purposes of the SSA, the ALJ

must follow a five-step sequential evaluation. *See* 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but burden then shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines whether the claimant is engaged in substantial, gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If she is, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment—or combination of impairments—that meets the duration requirement. *Id.* § 416.920(a)(4)(ii). If the claimant does not have such an impairment, she is not disabled. *Id.* If, however, the claimant has such an impairment, the ALJ proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets, or is medically equal to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(ii). If so, the claimant is disabled and entitled to benefits under the SSA. *Id.* If not, the analysis proceeds to step four, at which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If the claimant is capable of such work, the claimant is not disabled. If she is not capable of performing her past work, then the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(iv). If claimant is not capable of such work, the claimant is disabled and entitled to benefits. *Id.*

**II.     Judicial Review**

The Court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court will uphold an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Burnhart*, 400 F.3d 676, 679

(9th Cir. 2005)). As a general rule, if the "evidence is susceptible to more than one rational interpretation," the Court will affirm the ALJ's decision. *Id.* That said, the Court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

**III. Analysis**

Crow raises four issues for the Court's consideration: (1) the ALJ erred at step two in finding that Crow's post-stroke syndrome, seizure disorder, migraines, and left knee osteoarthritis are not severe impairments; (2) substantial evidence does not support the ALJ's step-four RFC determination; (3) the ALJ erred in discrediting Crow's symptom testimony; and (4) substantial evidence does not support the ALJ's step-five finding. (Doc. 11.) For the reasons herein, the Court affirms the ALJ's decision.

**A. The ALJ did not err in finding that Crow's post-stroke syndrome, seizure disorder, migraines, and left knee osteoarthritis are not severe impairments.**

At step two, an ALJ must determine whether the claimant has a medically determinable impairment—or combination of impairments—that is "severe." 20 C.F.R. § 404.1520(c). An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities" and "is expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1520(c), 404.1509. Basic work activities include: physical functions, like walking, standing, sitting, seeing, lifting, and pushing; social functions, like communicating and responding to supervisors and coworkers; and cognitive functions, like using judgment, understanding and carrying out instructions, and dealing with changes in a routine work setting. SSR 85-28, 1985 WL 56856, at *3. An impairment is *not* severe if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28, 1985 WL 56856, at *3). An ALJ's error at step two is harmless if, at step four, the ALJ properly considers the combined effect of all impairments—both severe and non-severe—in determining a claimant's RFC. *Lewis v.*

*Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In this case, the ALJ found Crow to suffer from the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, and asthma. (AR. 18.) Crow argues that the ALJ erred at step two in finding that her post-stroke syndrome, seizure disorder, migraines, and left knee osteoarthritis are not severe impairments. (Doc. 11 at 5–7.) Crow further argues that the ALJ's step-two error is harmful "because the ALJ failed to discuss—and hence, failed to consider—the impairments found to be non-severe as well as the combination of all of [Crow's] impairments at Step [Four]." (Doc. 11 at 7.) The Court disagrees.

First, Crow fails to argue with any specificity how the ALJ erred at step two with respect to her post-stroke syndrome, migraines, and left knee osteoarthritis. Crow emphasizes that the evaluation process at step two is a *de minimis* test intended to weed out minor impairments. *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020). Even so, Crow does not explain how these impairments pass the *de minimis* test. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). She neither points to evidence in the record demonstrating how these impairments significantly limit her ability to work, nor does she explain how the ALJ's decision is wrong or lacking at this step. Rather, Crow appears to ask the Court to *assume* that the ALJ erred at step two and proceeds to argue how this error is harmful at step four. But a Court cannot find an error to be harmful without first finding an error to exist. That said, the Court finds that substantial evidence supports the ALJ's step-two finding that Crow's post-stroke syndrome, seizure disorder, migraines, and left knee osteoarthritis are not severe impairments.

For Crow's post-stroke syndrome, the ALJ acknowledged Crow's testimony regarding the residual effects of the stroke, including "difficulty lifting heavy weights, impaired balance, memory problems, intermittent aphasia, numbness on one side of her body with pain on the other, and muscle atrophy." (AR. 20.) According to Crow, the atrophy and numbness affect both her right arm and leg. (*Id.*) She also reported joint pain,

stiffness, swelling, weakness, muscle spasms, dizziness, numbness, and tingling. (*Id.*) The ALJ found, however, that based on Crow's longitudinal medical record, any residual effects of her stroke do not cause more than a minimal limitation in Crow's ability to work. (*Id.*) The ALJ thoroughly described Crow's medical examinations and treatment. (*Id.*) For example, examinations revealed no focal motor or sensory deficits. (*See e.g.*, AR. 309, 794, 796.) She had normal muscle strength in her upper and lower extremities, normal grip strength, and a full range of motion in her extremities. (*See e.g.*, AR. 309, 798, 976.) The record also indicated that any joint pain was adequately treated and stabilized with medication. (*See e.g.*, 316, 831.) Crow also improved with physical therapy. (*See e.g.*, AR. 881, 888.) Although Crow testified that she had been using a cane since her stroke, the record also indicated that at times she presented with a normal gait. (*See e.g.*, AR. 309, 782.) Further, despite claiming aphasia (difficulty communicating) and memory lapses, Crow's records indicate normal speech, no consistent decline or focal impairments in neurophysiological testing, and average performance in intellectual testing. (*See e.g.*, AR. 307–08, 316, 324, 328.)

It was rational for the ALJ to find that Crow's post-stroke syndrome had, at most, a minimal impact on her ability to work and therefore was not a severe impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (holding that a court "may not reweigh the evidence or substitute its judgment for that of the ALJ"). Moreover, impairments that can be controlled by medication and treatment are not disabling. *See Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ's finding that Crow's post-stroke syndrome is not a severe impairment is supported by substantial evidence.

For her seizure disorder, the ALJ found that "[a]lthough the record repeatedly notes [Crow's] past medical history of seizures, there is not sufficient descriptions of observed events or subsequent treatment during the period at issue." (AR. 21.) The ALJ noted that Social Security Ruling ("SSR") 16-3p "instructs that symptoms and subjective reporting

alone are insufficient to establish the existence of an impairment. Rather, there must be medical signs or laboratory findings showing that a medically determinable impairment is present." (AR. 21, citing SSR 16-3p, 81 Fed. Reg. 14166.) The ALJ's finding that Crow's seizure disorder is not a medically determinable impairment is rational and supported by substantial evidence. Crow's alleged onset date of disability is March 11, 2019. Although the record notes Crow's past medical history of seizures prior to 2019 (*see e.g.*, AR. 303), the record does not contain objective medical evidence of any seizures or seizure treatment throughout 2019 and into 2020. Nor does Crow direct the Court's attention to any such evidence.

Rather, Crow contends that the "ALJ's reasoning that non-epileptic seizures are not real impairments if they could not be scientifically verified is wholly inconsistent with the medical literature because in most case[s] pseudo-seizures cannot be verified by testing." (Doc. 11 at 9.) Crow then cites *Fair v. Bowen* for the proposition "that a disability claim cannot be denied because the claimant failed to provide objective evidence for a condition that 'cannot be objectively verified or measured.'" 885 F.2d 597, 601–02. But Crow neglects a critical part of the Ninth Circuit's ruling in that case: "Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some* pain, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Id.* at 601. Yet Crow did not satisfy the predicate for the latter part of that holding to apply—she did *not* submit objective medical evidence establishing that her seizure disorder is an impairment. Furthermore, SSR 16-3p specifically provides that "to establish the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms" a claimant must provide "objective medical evidence from an acceptable source." SSR 16-3p, 81 Fed. Reg. 14166, 14168. The ALJ found that Crow did not do so. This finding is supported by the record, and Crow does not point to any evidence proving otherwise. Thus, the ALJ's determination that Crow's seizure disorder is not a medically determinable impairment is rational and supported by

substantial evidence.

For Crow's migraines, the ALJ found that despite reporting frequent migraines with some lasting up to twelve days at a time, the medical records do not reflect that she reported the frequency and duration of her migraines to her medical providers during the relevant period. (AR. 19) Additionally, the records reflect that Crow maintained normal cranial nerve function, alertness, cognition, speech, motor function, and mental status. (AR. 19, citing *e.g.*, AR. 309, 794, 962, 967.) The ALJ reasonably concluded that Crow's migraines did not significantly limit her ability to perform basic work activities, which is supported by substantial evidence.

Finally, for Crow's left knee osteoarthritis, the ALJ noted that a February 2018 x-ray showed mild degenerative joint disease. (AR. 19.) However, the record also demonstrates that Crow maintained a normal range of motion in the left knee without pain. (AR. 19, citing *e.g.*, AR. 798, 967.) Her left knee was not tender to palpitation and had negative static and dynamic patellar grind testing. (AR. 19, citing *e.g.*, AR. 1034.) Crow also often presented with normal muscle strength in her upper and lower extremities. (AR. 19, citing *e.g.*, AR. 309, 687.) Furthermore, the evidence demonstrates that with physical therapy, Crow experienced improved pain and mobility. (AR. 19, citing *e.g.*, AR. 881, 888.) Again, the ALJ reasonably concluded that Crow's left knee osteoarthritis did not significantly limit her ability to perform basic work activities, which is supported by substantial evidence.

In sum, substantial evidence supports the ALJ's decision that Crow's post-stroke syndrome, seizure disorder, migraines, and left knee osteoarthritis are not severe impairments. Though Crow may disagree with how the ALJ interpreted the evidence, the ALJ's decision is rational.

### B. Substantial evidence supports the ALJ's step-four RFC determination.

In assessing a claimant's RFC, an ALJ is required to "consider all of [a claimant's] medically determinable impairments . . . , including [those] that are not 'severe.'" 20 C.F.R. § 416.945(a)(2). To determine the total limiting effects of a claimant's

impairment(s) and any related symptoms, the ALJ considers all of the medical and nonmedical evidence, as well as the intensity and persistence of symptoms. *Id.* §§ 416.945(e), 416.929(c). The ALJ then assesses a claimant's ability to meet the physical, mental, sensory, and other requirements of work. *Id.* § 416.945(a)(4).

Here, the ALJ found that Crow has the RFC to perform medium work except that she must avoid concentrated exposure to pulmonary irritants, such as chemicals, odors, dusts, fumes, and gases. (AR. 24.) Crow contends that the ALJ abused her discretion in assigning a medium RFC given Crow's cane use, pseudo-seizure disorder, migraines, and left knee osteoarthritis, all of which should have ruled out medium work. Again, Crow does not argue this with any specificity: she neither explains why these conditions should have ruled out an RFC of medium work, nor does she point out any part of the ALJ's RFC determination that is wrong or lacking.

Even so, the Court finds that the ALJ's RFC determination is rational and supported by substantial evidence. As already discussed, substantial evidence supported the ALJ's finding that Crow's pseudo-seizure disorder, migraines, and left knee osteoarthritis do not significantly limit Crow's ability to work and therefore are not severe impairments. "While [SSA] regulations require the ALJ to consider the effect of all [claimant's] impairments in formulating the RFC, they do not require [the ALJ] to translate every non-severe impairment into a functional limitation in the RFC." *Rania v. Kijakazi*, No. 2:20-cv-01541, 2021 WL 5771663, at *3 (E.D. Cal. Dec. 6. 2021); *see also Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (rejecting plaintiff's argument that the ALJ was required to include mild mental limitations in the RFC determination). Here, the record demonstrates that the ALJ properly considered Crow's post-stroke syndrome, migraines, and left knee osteoarthritis. The ALJ thoroughly discussed the medical and non-medical evidence, as well as Plaintiff's symptom testimony. (AR. 24–29.) Based on this, the ALJ rationally concluded that these impairments do not constitute functional limitations, nor do they preclude an RFC of medium work.

And as for Crow's cane use, substantial evidence supports the ALJ's finding that

Crow would be able to perform medium exertional work without the need for an assistive device during ambulation or postural limitations. As noted above, Crow's medical records demonstrate that she maintained a full range of motion in her extremities, had normal muscle strength, had no focal motor or sensory deficits, and presented normal physical examinations. (*See e.g.*, AR. 309, 798, 993, 980.) It was rational for the ALJ to find that the record does not support a limitation in the RFC that Crow requires a cane.

Crow also argues that the ALJ "failed to consider or incorporate into the RFC any non-exertional limitations to due [Crow's] Depression." (Doc. 11 at 11.) Yet again, Crow neither explains how her depression limits her ability to work nor points to evidence in the record demonstrating this. Furthermore, substantial evidence supports the ALJ's finding that Crow's depression was not a medically determinable mental health impairment and that any symptoms associated with her alleged depression were mild and would not significantly limit her ability to perform basic work activities. (AR. 23.) The ALJ noted that Crow failed to present evidence of significant medical signs or laboratory findings of any mental health impairments during the relevant period, a showing which is required under SSR 16-3p. (*Id.*) Furthermore, objective medical evidence did not support a finding that Crow's depression reasonably could be expected to produce her alleged symptoms, which she claimed were long and short-term memory issues and cognitive thinking deficits. (*Id.*) For example, Crow routinely had normal mental status examinations, including normal scores for memory, attention, and comprehension. (AR. 23, citing *e.g.*, 324, 812, 835, 840, 962.) She presented with normal judgment, speech, mood, and orientation. (*Id.*) Moreover, she regularly presented as being cooperative, alert, and oriented. (*Id.*) The ALJ did not err in excluding from the RFC a non-exertional limitation due to Crow's depression, which Crow alleged but failed to prove. The Court's upholds the ALJ's step-four RFC assessment.

**C. The ALJ provided clear, convincing, and specific reasons supported by substantial evidence to discredit Crow's symptom testimony.**

An ALJ employs a two-step process in evaluating a claimant's symptom testimony.

*Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ must determine whether there is an underlying medically determinable impairment that "could reasonably be expected to produce the . . . symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation omitted). If the claimant meets this first test and absent evidence of malingering, the ALJ then "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015. This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1015. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] . . . did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

      Here, the ALJ first noted that Crow alleges limitations in her ability to work due to a number of conditions, including seizures, post-stroke syndrome with muscle atrophy, degenerative joint disease in her knees, and migraines. (AR. 25.) Crow testified that due to these conditions, she experienced the following symptoms: increased fatigue; insomnia; physical difficulties, such as with lifting, squatting, bending, standing, reaching, walking, sitting; and cognitive difficulties, such as trouble remembering, completing tasks, concentrating, understanding. (*Id.*) The ALJ found that Crow's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Crow's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) Crow argues that the ALJ erred in failing to credit her testimony as true as to her impairments, symptoms, and limitations. (Doc. 11 at 12.) The Court disagrees.

      For Crow's seizure disorder, the ALJ did not need to credit any part of Crow's symptom testimony because, as previously discussed, the ALJ rationally concluded that the seizure disorder was not a medically determinable impairment during the relevant period. Because Crow failed to prove that her seizure disorder was an underlying medical

impairment during the relevant period, she failed the first step in the two-part process the ALJ uses for evaluating symptom testimony. Thus, the ALJ committed no error in failing to credit her symptom testimony regarding her seizures. 20 C.F.R. § 404.1529(b) ("Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present.").

Regarding Crow's remaining symptoms, the ALJ found that Crow's objective medical records, treatment regimen, and daily activities all controverted her symptom testimony regarding the intensity, persistence, and limiting effects of her conditions. (AR. 25–27.) For example, the ALJ noted that though x-rays demonstrated mild degenerative changes in her knees, Crow demonstrated a normal range of motion, fairly good stability with squat testing, intact motor and sensory function, and a responsiveness to pain medication. (AR. 26, citing *e.g.*, 1005, 1034, 1038.) As for Crow's claim that she struggles with sitting, standing, and walking, the ALJ pointed to physical therapy records, demonstrating that, with ongoing treatment, Crow was able to complete an increased number of exercises, could manage medium weights if they were conveniently placed, and could sit as long as she liked. (AR. 26, citing *e.g.*, 881–85, 888.) Furthermore, Crow reported improved pain and mobility with physical therapy. (AR. 26, citing *e.g.*, 881–85, 888.) Despite claiming debilitating back pain, medical records indicate that Crow was prescribed medication that successfully treated her pain and that she reported her back pain as stable in 2020. (AR. 26, citing AR. 1420, 1455.) Further, the ALJ observed that Crow was generally independent in her hygiene tasks, could prepare simple meals, could shop in stores, and could occasionally assist with household chores, such as washing the dishes, dusting, and feeding the cats. (AR. 27, citing *e.g.*, 57, 227, 811.)

The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for discrediting Crow's symptom testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (holding that inconsistencies between subjective complaints and objective medical evidence is a clear and convincing reason for discounting claimant's

testimony); *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Hanes v. Colvin*, 651 F. Appx. 703, 705 (9th Cir. June 5, 2016) (holding that evidence of "conservative treatment plan," including minimal medication and physical therapy, is a specific and cogent reason for discounting claimant's testimony regarding the severity of symptoms). Though Crow may advocate for a more favorable reading of the evidence, the Court cannot second guess the ALJ's reasonable interpretation of the record.

**D. Substantial evidence supports the ALJ's step-five finding that Crow is not disabled.**

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, *or* (b) by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1101–02.

The Medical Vocational Guidelines, also known as the "grids," provide a "shorthand method for determining the availability and numbers of suitable jobs for a claimant." *Id.* at 1101. Specifically, the grids categorize jobs by their physical-exertional requirements—such as maximum sustained work capacity limited to sedentary work, light work, or medium work—with each grid presenting various combinations of factors relevant to a claimant's ability to find work. *Id.* These factors include a claimant's age, education, and work experience. *Id.* "For each combination of these factors, e.g., fifty years old, limited education, and unskilled work experience, the grids direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.* In making a step-five finding, an ALJ

may rely on the grids alone to determine the availability of jobs for the claimant "only when the grids accurately and completely described the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). "In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Tackett*, 180 F.3d at 1101.

Here, the ALJ relied on the grids to find that Crow is not disabled. (AR. 29–30.) The ALJ first noted that Crow is 50 years old, has a high school education, has no relevant past work experience, and has the RFC to perform medium work, except that she must avoid concentrated exposure to pulmonary irritants, such as chemicals, odors, dusts, fumes, and gases. (*Id.*) Regarding Crow's single limitation, the ALJ noted that SSR 83-14 instructs that the "need to avoid environments which contain objects or substances commonly known not to exist in most workplaces would be an . . . example of a restriction which does not significantly affect the medium occupational base." (*Id.*) Further, SSR 85-15 clarifies that "the need to avoid excessive amounts of dusts or other environmental restrictions has a minimal impact on the broad world of work." (*Id.*) The ALJ concluded that considering Crow's age, education, lack of work experience, and RFC to perform medium work, Medical-Vocational Rule 203.21 directs a finding of "not disabled." (*Id.*)

Crow contends that the ALJ abused her discretion and committed clear error by failing to pose any hypotheticals to a vocational expert ("VE") considering that Crow "clearly has multiple limitations." (Doc. 11 at 11.) Not so. The ALJ's step-five conclusion here comports with applicable agency regulations, is rational, and is supported by substantial evidence.

First, as already discussed, the ALJ's RFC assessment was rational and supported by substantial evidence. And that RFC determination only included one limitation: that Crow should avoid concentrated exposure to pulmonary irritants. Thus, contrary to Crow's argument, the ALJ committed no error by failing to pose hypothetical questions to the VE that included Crow's other "multiple impairments," namely her seizure disorder, post-stroke syndrome, migraines, and left knee osteoarthritis. *Osenbrock v. Apfel*, 240 F.3d

1157, 1163 (9th Cir. 2001) ("Because [claimant] did not present any evidence [of his alleged impairments], the ALJ did not err in failing to include these alleged impairments in the hypothetical question posed to the VE.").

Moreover, the ALJ was not required to consult a VE in the first place. SSA regulations provide that an ALJ may rely *solely* on the grids when the grids accurately and completely describe a claimant's abilities and limitations. If the grids do *not* account completely for a claimant's limitations, then the ALJ may need to consult a VE to determine whether a claimant can perform other work that exists in significant numbers in the national economy. Here, the ALJ reasonably concluded that the grids completely and accurately account for Crow's abilities. Medical-Vocational Rule 203.21 falls under the "Medium Sustained Work Capacity" grid and corresponds to a person closely approaching advanced age (ages 50-54), with a high school education or more, and with unskilled or no previous work experience. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.21. Crow was 50 years old on the date her application was filed, has at least a high school education, has no past work experience, and has an RFC of medium work. Thus, Crow corresponds with Rule 203.21

The ALJ also reasonably concluded, in accordance with agency policy, that Crow's need to avoid excessive pulmonary irritants is not a limitation that significantly erodes the base of jobs that Crow can perform. SSR 83-14, 1983 WL 31254, at *5 ("The need to avoid environments which contain objects or substances commonly known not to exist in most workplaces would be an obvious example of a restriction which does not significantly affect the medium occupational base."); *see also* SSR 85-15, 1985 WL 56857, at *8 ("Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."). Thus, despite this limitation, Rule 203.21 completely accounts for Crow's abilities, and so it was rational for the ALJ to rely on the grids in making the step-five finding. Because Rule 203.21 directs a finding of "not disabled," the Court affirms the ALJ's decision. Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 24th day of October, 2023.

Douglas L. Rayes
United States District Judge